17-10-15 Magicjack Vocaltec Ltd v. City of Chicago Would the parties please approach and state your names for the record. Spell them. Lauren Ferrante Martiri M-A-R-T-I-R-E Lauren Ferrante F-E-R-R-A-N-T-I-R-E Lauren Ferrante Martiri M-A-R-T-I-R-E polymerase ebulite polymerase ebulite  polymerase ebulite polymerase ebulite polymerase ebulite May it please the Court, here today representing the appellants in this case. This case focuses on what an Illinois municipality can demand of a business that has absolutely no presence in the municipality. How much of a burden can a municipality impose on a remote business? The appellants here are challenging the city of Chicago's right to audit and assess tax against them. They claim the city lacks jurisdiction over them. And jurisdiction is a threshold issue that should be determined for any aggrieved party before that party is required to proceed on the merits. We have two appellants here, MagicJack Vocal Tech Limited, which is an Israeli publicly traded company that owns patents in the VoIP area, that's Voice Over Internet Protocol, and a shorthand reference to that is that is technology that lets somebody place a telephone call over the internet instead of through a standard telephonic digital analog line. And YMX Communications Corporation, and that entity sells services related to VoIP technology. These companies have no presence in the city of Chicago. They don't have any employees here. They don't have any offices here, no warehouses, no agents, no computer services. You filed a protest and you included those very same arguments you're making here in that protest, is that right? Yes. The statute which creates the taxation statute says that these taxes should not be construed in a way that's unconstitutional. So can't that agency decide the questions that you have presented? It cannot, Your Honor. Are you talking about the Department of Administrative Hearings? Yes. The Department of Administrative Hearings limits its jurisdiction. It cannot consider facial constitutional challenges. And we are raising a facial constitutional challenge based on the plain language of the ordinance that's here. The city's jurisdiction. Which entity did you request that the statute be declared unconstitutional? For both entities, Your Honor. You prayed for that in your relief in the complaint? Yes, Your Honor. Both entities have been subject to estimated assessments of tax here. So both of them object to the city's jurisdiction. What I'm asking you though, did you specifically request that the statute be declared unconstitutional? It's done in our complaint which says that there is a violation of the Constitution under the Due Process Clause and the Commerce Clause. Did this apply to you? No, Your Honor. On its face, it's unconstitutional based on that language of the ordinance. That's really the heart of the dispute here and the heart of our claim. Our motion to do two things. We had some estimated assessments of tax by the city. The city started an audit after one of the appellants, YNEX Communications Corporation, had been audited by the Illinois Department of Revenue for the Illinois Telecommunications Excise Tax. That tax has a definition of telecommunications that is identical to the city's ordinance's definition of that there was no tax due. Within 60 days after that, we got a notice from the city with a notice of intent to audit. Very burdensome audit questionnaire including any company you've owned in the past six years, what's the business activities of any one of those entities, all your bank accounts, every single officer and director over those past few years, what their phone numbers are, what their home addresses are. Very burdensome. Both companies felt very strongly that the city did not have jurisdiction to audit or assess tax against them. We met with the city. We met with the city and expressed those points of view. The city asked us to send them a written memorandum about that. We did that, a detailed memorandum. And then we waited for seven months and we got no response whatsoever from the city until December of a year when the city called and said we agree to extend the limitations period so that we can continue to audit. I agree that you're arguing that imposition of this tax on your client would violate the Constitution. But what I'm trying to get to is where do you ask or pray that the ordinance itself be declared unconstitutional totally on its face? Our complaint calls for injunctive relief and declaratory relief because the city's imposition of tax violates the Constitution. What is the prayer that you ask for? The prayer that we ask for was that the tax be declared unconstitutional. I thought in reading your complaint that the language pointed more to an as applied challenge where you say, quote, the department's effort to audit and YMCC under these circumstances violates the due process clause of the Illinois and United States Constitution, violates the commerce clause. To me, reading that in the body of your complaint, it sounds like it's an as applied challenge as opposed to a facial challenge, independent of whether or not you should have gotten the injunctive relief, independent of that. To me, looking at that, it sounds like you're pleading the facts, the auditing of you under these circumstances, your language, not mine. Why is that not an as applied challenge? That's because of the language of the ordinances themselves, which assert that the tax can be applied to anybody with any presence within the state. I think there are other broader paragraphs within our complaint that talk about the fact that there is a constitutional violation without the use of the phrase as applied to our client. The city filed a motion to dismiss the complaint which the circuit court granted, and that was error for three reasons. First of all, if you look at the basis for the circuit court's reasoning, the third rule on that basis, what it rules on is the notion that these plaintiffs could have come to the circuit court under the Illinois Protest Monies Act, and they could have gotten all the relief that they're seeking before the circuit court if they'd only paid their tax under protest and proceeded under the Protest Monies Act. That was error. You can only pay a tax under protest and proceed in circuit court in that manner if you are protesting a tax that's being imposed by an agency of the state. These were taxes that were being imposed by the city of Chicago. So that on its own is reversible error. But second of all we're not bound to adopt the reasoning of the trial court, are we? If you look at the basis for the circuit court's reasoning, the third rule on that basis, what it rules on is the notion that these plaintiffs could have come to the circuit court under the Illinois Protest Monies Act, and they could have gotten all the relief that they seek before the circuit court if they'd only paid their tax under protest and proceeded under the Protest Monies Act. The second is there are two Illinois Supreme Court cases that have recognized this doctrine that's called the unauthorized by law exception to the doctrine of administrative remedies. Both are facts that we find to be quite similar to our facts. One is the Knox County versus the Highlands case, and that's a case where the Highlands was an agricultural entity that got a permit to build a hog farm in central Illinois. Neighbors didn't like that. They went to the zoning board and got the permit pulled. And rather than proceeding an administrative review on the zoning area, the Highlands went to the circuit court. They filed for declaratory judgment. They got exempt with relief on the notion that the zoning board did not have the authority to proceed because it lacked jurisdiction because an agricultural entity was entitled to a permit as long as they were engaged in an agricultural purpose. The second case is where we can see that you had a right based on unauthorized. There's an exception for unauthorized tax. There's an exception to the exception in there if you begin or commence an action before the administrative agency first. Your Honor, we did not proceed on the merits before the Department of Administrative Hearings. Well, you just conceded that you filed a protest and it's attached to that argument that you're making in your brief today as an appendage. I mean, you're attached with five or ten pages of argument to the protest presenting these arguments about the constitutionality of imposing the tax on you. The reason why we're not precluded in this instance and why we shouldn't be deemed to have proceeded before administrative review is that we couldn't obtain that facial constitutional relief. In effect, we couldn't get a jurisdictional ruling. The heart of the matter is here, shouldn't you have the right to get your jurisdiction established before you have to proceed on the merits? If forced to proceed in administrative hearings, these appellants have to proceed on the merits of their claim. They may well prevail on that. But the court doesn't have jurisdiction. That ought to be decided first as a threshold matter. The administrative agency had to make a determination about whether this tax applied to your entity because the creating statute specifically says, this tax shall not be imposed in a manner that would violate the constitution. And, therefore, the relief that you pray for is basically the relief that the agency is empowered to consider by the creating statute. I will say to you, Your Honor, there are many, many, many statutes and ordinances where the taxing authority says, we're not doing anything unconstitutional. And if that were a basis to shut down a constitutional argument, no taxpayer or alleged taxpayer would ever have the right to bring a challenge to the imposition of a tax. You see that all the time. The point I'm getting is not that you couldn't do it, go directly to court. The question I'm asking you, if you have such a challenge, and instead of going to court, you go before the agency with these arguments, do you forfeit the right to go directly to court? So is it an election of remedies situation? Yeah, and the answer is, Your Honor, it is not. First of all, we had no choice other than to preserve our right to proceed on the merits by seeking that, seeking review for the Department of Administrative Hearings. So you're compelled to do that. Compelled to do that. There's no effort and no evidence in the record of any attempt by this taxpayer to proceed on two fronts. We never have proceeded on the merits before the Department of Administrative Hearings. So that puts you in some sort of a catch-22. Yeah, we filed it. We then wanted to get the jurisdictional issue raised. So we decided we needed to do the declaratory judgment action. Immediately we asked that the Department of Administrative Hearings proceeding be stayed. That request was granted. When we appealed to this court, again, we filed a motion for stay. That motion was granted. So there's never been any effort to proceed on two fronts, and the Department of Administrative Hearings has simply stayed the action. If you look at the pleadings for that proceeding, it's just a number of states that have continued on. So there was an election of remedies, and there cannot be when you cannot get the relief that you're seeking from the administrative entity. So I'd like to speak in my remaining time briefly to the preliminary injunction issue because we were asking the court to not only reverse the dismissal of the case, but also to reverse its ruling on the motion for preliminary injunction. So if this dismissal is upheld, effectively what's happening to these colleagues is they are deprived of an adequate remedy of law because they cannot challenge, cannot bring a facial challenge to this statute. In other words, they have to proceed on the merits before the jurisdiction is established. That's backwards here. That's backwards in any type of legal proceeding. The jurisdictional issue ought to be resolved first. Just like your honors have the right to raise jurisdiction at any time in a proceeding, even if the parties aren't raising it in a proceeding before you. You know, second, have we demonstrated a likelihood of success on the merits? We believe the answer to that is clearly yes. First, there is a challenge to nexus under both the due process and commerce clauses of the United States Constitution. The city has asserted that nexus is not an issue because it's been resolved by a United States Supreme Court case called Goldberg v. Sweet. We would suggest to you that that argument is error. If you look at Goldberg v. Sweet, it's not that nexus was not an issue. Nexus was stipulated by the parties in that case. And you can see that, for example, at 488 U.S. 267. There's a pinpoint site where that's clear. We're also alleging that the city is taxing extraterritorially here in violation of its own rural authority. This is a situation not unlike the Hertz case where the city said to rental car agencies that were based outside the limits of the city of Chicago that they had an obligation to collect and remit the city's personal property lease tax. Similarly here, we have the city saying in its ordinances, if you're located anywhere in the state, we can make you collect and remit. What about the 911 service? Yes. I mean, the people in the city of Chicago who use this service, when they're calling 911, they're not getting the Oak Brook Fire Department. Doesn't that implicate, you know, that there's some activity within the jurisdiction here? What good is a phone, whether it's a cell phone, a phone on the wall like the old days, or a MiJack, if you can't call the cops or an ambulance if you need it? And what you're speaking to, Your Honor, is what a user does after they have that phone, okay? These entities are not involved in what a user's decision is. The services that YMCC is providing are not taking place in the city of Chicago. The product wouldn't be worth much if you couldn't use it to call an ambulance if you think you're having a heart attack, right? I think the 911 service is important to some people that use these devices. They have the choice whether or not they want to sign up for 911 service. If you believe it, they do have that choice, and they can elect whether or not to. But we're not talking about that portion of the transaction. What we're talking about is what the services are that are provided by YMCC. It's not even selling the device that's in question here. All it is is an entity that when a user chooses to place a call, which can be made anywhere in the country or even around the world, they verify a phone number, and then they send that verification on to the Internet service provider. The Internet service provider then makes the call, and the user is billed by their Internet service provider for making that call. So it's quite divorced, okay? The city makes a point about two facts here. One is that this YMCC did in 2013 decide to collect and remit that surcharge, and the city's claim appears to be that because they decided to do it then, they should somehow have liability for the previous six years. But, of course, there's no admission there. A taxpayer can, for a variety of reasons, decide to collect and remit a tax on a going-forward basis, and that doesn't establish prior liability. The city also disputes on the preliminary injunction issue, which was speaking to whether or not there's a risk of irreparable injury here, and we want to emphasize that the risk of irreparable injury is very real. What is it? The city is dismissive of that, and the circuit court talked about authority that said if money will make you whole, then it's not. But I think if you look at... So what are you, in the time remaining, what would you offer to this court is the irreparable harm? What I would offer to this court, or what I'd say is very real to these clients, why they stand here in front of you, is the risk of burdensome taxation by multiple jurisdictions. And you see that burden recognized in a number of court decisions. You see that recognized in the two United States Supreme Court cases we cited to you, the actual Bellis-Hess and the Quill case. But you also see it in our Illinois Supreme Court in its Hertz decision last year. I wanted to just read that to you. You know, in the Hertz case, they talk about another Illinois Supreme Court case, which was Commercial National Bank in this area. And so the Hertz court says, you know, unrestrained extraterritorial exercise of the powers of taxation and zoning, and in other areas, could create serious problems, as each home rule unit in Illinois could exercise such powers. I think what's important to recognize here is that appellants that work in the telecommunications space are subject to thousands of taxing jurisdictions all across the United States. Not just the 50 states, but all the municipalities. It's one of the most heavily taxed areas of commerce in this nation right now. And the burden of allowing all these entities, even every municipality in Illinois, to have the right to initiate an audit and assess tax, merely because you have some presence outside of the municipality, is extremely burdensome. Isn't there a credit in there somewhere that if you pay tax elsewhere, it can be subtracted from? Many of those do have a credit, Your Honor, but you still have the obligation to respond to the audit, go through your records, answer these detailed questionnaires, prove that you paid tax elsewhere. And so for these companies, it's a really serious burden to be faced with that, and that's why they bring this lawsuit. So for these reasons, what we'd ask that you do is reverse the trial court's rulings, continue to stay and remand for further proceedings in the circuit court. Thank you. Thank you, Ms. Mateo. May it please the Court. Whatever the merits of the plaintiff company's objections to the taxes that have been assessed in this case, the appropriate venue for raising those objections and for those objections to be resolved is a Department of Administrative hearings where the plaintiffs filed protests to the taxes assessed against them. Let me be clear. This is not a facial challenge to the constitutionality of the telecommunications ordinance. There's no plausible claim that the ordinance on its face is unconstitutional in any application. The telecom tax at issue here imposes taxes on originating or receiving interstate calls in the city of Chicago. In other words, the taxable transaction is the subscriber's use of the service. And as Justice Laddin was pointing out, it's the use of, you know, that's the value to the customers of the companies is their ability to use the service to make phone calls. Now, the specifics of, you know, whether there are customers who are using it in the city, whether people have billing addresses there, you know, those are all facts that can be. What are the procedural steps that the city believes that these parties need to go through, the hurdles that they have to go through procedurally, administratively, below, in order to reach not only the merits but whether or not there is appropriate jurisdiction here? Tell us what their path is. The protests that were filed should be adjudicated before DOH. So the parties would appear before DOH and, you know, more information would be developed on what the plaintiff's business activities are, the nature of the services they provide. And, you know, the questions of jurisdiction, there's really, I mean, we don't, you know, the plaintiffs are very focused on their lack of a physical presence and their, you know, not being physically in the state or in the city conducting business. You know, what's important to the applicability of the telecom tax is, you know, the use of services there. We know that the plaintiffs have agreements with local telephone providers to use the public switch telephone network. I mean, the services don't work without reliance on local telephone networks. But I guess to your question, the, you know, resolving these questions about jurisdiction and whether there's any transaction that's properly taxable under the ordinance, there's every opportunity to raise that before the Department of Administrative Hearings. Okay. So let's say they lose there. Can they then go into the circuit court and ask that it be declared unconstitutional facially and that there's no jurisdiction? Yes. They have every right to pursue administrative review if they're not successful before Department of Administrative Hearings. And, I mean, we agree that where there is a true facial constitutional challenge to an ordinance asserted, Department of Administrative Hearings doesn't have the authority to reach that decision. The rule is generally that you should raise that objection before DOAH because the evidence, you know, it's often a fact-dependent determination, and so the issue should be developed before the administrative agency. But here, you know, by the plaintiff's own characterization, you know, they say in their brief that they raise a facial challenge to the application of the taxes against them. It's really a concession that it's an as-applied challenge. I mean, calling it a facial challenge doesn't make it a challenge. And the complaint itself, which Justice House was asking about what the, you know, what they asked for, they asked for a declaration that the department lacks the authority under the Illinois Constitution or the United States Constitution to audit plaintiffs. You know, there's nothing on the face of the ordinance that says it applies extraterritorial, that it applies to transactions with no connection to the state. So the issue to be raised on plaintiff's protest before DOAH is whether the transactions that their customers engage in are taxable under the ordinance. It's a fact-dependent determination. Any jurisdictional objections, any objections to the allegedly burdensome nature of the inquiries made can be raised before DOAH. And, you know, if you're... And plaintiffs allege that the Millennium Park case... Yes. ...gives them the authority to bring their claims because they're challenging the authority to impose the tax to the circuit court directly without going to the Department of Administrative Hearing. What is your response? I have two responses to that. I mean, the first is, as you, I think, quite accurately characterized it, an exception to the exception, which is the unauthorized by law exception doesn't apply where the plaintiff has already elected to proceed before administrative hearings. Now, it's true that the plaintiffs here immediately sought to stay in the DOAH proceedings and filed the complaint here, they did file protests that went to DOAH, so there's that. And, you know, the argument that counsel had made before was that that didn't matter because that was essentially futile because the DOAH couldn't rule on the constitutional exceptions. I think that's, I've explained why that's not correct. And even apart from that distinction that the plaintiffs here filed the protests, you know, Millennium Park and the Knox case are the different sort of, the unauthorized by law exception there applied really because the subject matter of the property at issue was by its nature exempt. You know, in the Knox case, it was agricultural land, it's not subject to these zonings, and it was obviously agricultural land. In the Millennium Park case, it was park district property. There was no question that the property was exempt. The question was whether the interest that the plaintiffs there had in that was a lease or a license. And it was evident, and you could tell from the contract in that case, the court was able to decide that it was a license and was able to give the taxpayer relief there in the circuit court  Here are the questions about whether this, it's not properly characterized as an assertion that the tax isn't authorized by law. It's that it doesn't apply here because they're not the right kind of transactions. Those are issues that DOAH can and should evaluate in the first instance. Counsel, Ms. Mateer indicated that before DOAH, they did not proceed on the merits. And so it was absolutely proper for them then to test the jurisdictional issue in the circuit court. Does that matter that they did not proceed on the merits in DOAH? No, it doesn't matter. I mean, we would actually, there would be an exhaustion of remedies issue in this case, even if the plaintiffs hadn't filed the protest before DOAH in the first instance. I mean, that's like an exception to the exception that's recognized in Millennium Park. But exhaustion applies whether relief is sought in the agency in the first place. And, you know, the protests were filed. The fact that plaintiffs didn't proceed there doesn't affect the exhaustion of remedies issue. Let's go back for a second. A couple of seconds ago, you were kind of spinning hairs on the types of not authorized. Yeah. What cases do you have where they make that distinction where one type of not authorized can be challenged and the other type cannot? I don't have any particular cases splitting the hairs. I mean, but it is a distinction between the Knox case and Millennium Park. And I think particularly important in Millennium Park was that it was the court could tell from, you know, looking at what it had before it that, you know, you look at the contract and figure out, no, this is a license and not a lease, and on that basis the property is not subject to tax. Here there's nothing this court can look at on this record and decide whether these, you know, taxes are properly applied here. We need more information. And that's, I mean, if this court were to determine that plaintiffs weren't required to exhaust the administrative remedies, you know, all that would mean was that the dismissal of the complaint should be reversed and it should go back to the circuit court, and all the issues that would be litigated before DOH would be litigated in the first instance in the circuit court. There's not a basis here for this court to make a declaration about the applicability of these taxes. And so you certainly can't say on this record that this tax is unauthorized by law, and it's, again, very fact-dependent, should proceed before DOH. I mean, I'm happy to address any other questions the court has. Otherwise, I think, you know, the factors, we cover the factors for injunctive relief in our brief. You know, the merits of plaintiff's objections, we deal with the physical presence of the company in the city and, you know, what kind of business they engage in or don't here isn't what matters under telecommunications. You know, since Goldberg v. Sweet, the United States Supreme Court decision, it's been clear that, you know, the substantial nexus that's required under both the commerce cause and due process doesn't depend on physical presence. It, you know, depends on subscribers' use of the services within the jurisdiction. There are also protections for any double taxation. This, you know, particular ordinance allows a credit or a set-off if a tax has been paid on the same transaction elsewhere. And, you know, the objections to requests for information in this case, they're standard inquiries the Department of Revenue puts out. Many of them go to, you know, the Department's ability to collect a tax if the tax is upheld. You know, and it's true that telecommunications and these internet, you know, voice-over internet protocol, they raise interesting issues of taxation that legislatures have had to deal with, the companies have had to deal with. You know, submitting information to taxing jurisdictions is part of the cost of doing that business. And, you know, there's certainly not a jurisdictional issue here. The case should, the circuit court's judgment should be affirmed. The case should go back to DOAH. And if plaintiffs are unhappy with the result there, they can seek administrative review under the administrative review law. Thank you very much. Thank you. We ask that the circuit court's judgment be affirmed. I want to begin by giving you a record site to the provision in our complaint that asserts, as counsel just referenced, that the city is without authority to tax here. It's R3, the page site is C537. I apologize for not having the exact paragraph of our complaint. But that's our record site for authority, and that's in our brief. So if you're making an allegation that a city is without authority to tax, that is a facial challenge. And jurisdiction here is a question of law, which makes it a facial challenge. The city is arguing that there are many questions of facts. And if we were looking at this tax and its application on the merits, I agree, there are fact issues. But with respect to the jurisdictional question, that's what we're seeking that right to raise before the circuit court. That is a question of law, and that is resolved by looking at the language of these city ordinances, comparing that to the Constitution, and determining whether or not in this instance the city has the right to proceed. So for that additional reason, I'd ask that the court grant our appeal and reverse these rulings and give us the right to go back to the circuit court and get our jurisdictional issue worked out before we have to proceed on the merits here. Thank you, Your Honor. Thank you, counsel. The issues were adequately and eloquently argued. The matter will be taken under advisement and issued in due course. Thank you.